Smith, &c. vs. Gower.

CASE 43————————OCTOBER 12.

# Smith, &c. vs. Gower.

3me 171
122    772
123    495

APPEAL FROM BOURBON CIRCUIT COURT.

A person who is prayed to be made a defendant, in a petition, does not thereby become a party to the action. To make him so, process must issue, and service, either actual or constructive, must be had.

Where one summoned as garnishee in a general attachment fails to appear either in person or by affidavit, and thereby makes default, the court may coerce his personal appearance for examination, or may hear proof of his indebtedness to the defendant and order the payment or security for the payment of the amount into court, or to such person as it may direct, who shall give bond with security for the same, or the court may permit the garnishee to retain the amount upon the execution of bond, &c. (*Civil Code, secs.* 246, 247.) The court cannot, upon such default and proof of indebtedness, render a final judgment in favor of the plaintiff against the garnishee enforcible by execution. The only mode in which such a judgment may be obtained is that prescribed by section 248, by *action* against the garnishee.

An execution creditor, upon return of *nulla bona*, seeking to subject a debt due to the defendant, may do so either by making the person owing the debt a *defendant* to his equitable action ; or, in such action, he may have a general attachment against the defendant and have his debtor summoned as a *garnishee*. If the latter mode be adopted the proceedings against the garnishee must conform to the requirements of the Civil Code in relation to garnishees summoned under a general attachment.

Where the garnishee in a general attachment has been summoned, and appears, and discloses the amount of his indebtedness to the defendant; or, where he makes default by failing to appear, and the court, as it may do, hears proof as to the amount of his indebtedness; he may be ordered to pay the amount into court, or to a receiver, or may be allowed to retain it on the terms fixed by law. The court may make either of these orders, at its discretion, and as the circumstances of the case may render most appropriate, and may, by its process of rule and attachment, compel the garnishee to obey and perform its mandate, as in like cases. If, at the time the garnishee so discloses, or the amount of his indebtedness is so proved, there is a judgment against the defendant to which the indebtedness can be immediately applied, the appropriate order would be to require the garnishee to pay the fund into court, and when paid, the proceeds applied as directed in *section* 250 of Civil Code. (See *response to petition for rehearing*.)

The forms and modes of procedure prescribed by the Civil Code—especially those which regulate what are called *provisional remedies*—should be strictly conformed to.

HANSON & PREWITT, and ALEXANDER & HANSON, for appellants, cited *Civil Code, secs*. 65, 247, 393, 395, 396, 474, 574, 578, 579.

JAMES HARLAN, on same side, cited 2 *Bibb,* 608 ; 3 *Dana*, 73 ; *Lexington and Danville Railroad Co. vs. Morrissey, MS. opinion*, December, 1856 ; 1 *Metcalfe,* 43 ; *Ib.,* 241 ; *Ib.,* 489 ; *Ib.,* 499.

WILLIAMS & PRALL, on same side.

J. R. THORNTON, for appellee, cited 1 *Marsh.*, 594; 2 *Ib.*, 500; 4 *Mon.*, 544; *Civil Code, sec.* 247.

BUCKNER & DUDLEY, and J. B. BECK, on same side, cited *Civil Code, secs.* 474, 476; 1 *Marsh.*, 592; 6 *Mon.*, 205; *Civil Code, secs.* 65, 118, 247.

JUDGE DUVALL DELIVERED THE OPINION OF THE COURT:

Gower obtained a judgment against the Lexington and Danville railroad company, in the Bourbon circuit court, at its April term, 1859, for $2,482 46, on which execution was regularly issued, and was returned, in substance, "no property found."

Gower then filed his petition in equity against the company, alleging its insolvency, but that "he is informed and believes that there are debts due to said road company from certain individuals," whom he proceeds to designate, including the appellants, with the sums alleged to be due from them respectively. Smith is charged to be indebted to the company "in the sum of $2,500, besides interest, payable in cross-ties, at 40 cents each;" and that Davis is indebted to said company in the sum of $500, payable in cross-ties, at 40 cents each, besides interest from the 1st of July, 1854. He therefore "prays that the aforesaid debtors of said railroad be made defendants to this petition, and answer the same, and that they each state how much they respectively owe said company, and that the sums respectively owing by them, and each of them, be attached in their hands, as garnishees," and applied to the satisfaction of the judgment, &c.

No *summons* appears to have issued on this petition against either of the parties alleged to be indebted to the company; but the record contains this statement: "Attachment returned by the sheriff of Mercer county, no property found, and executed on Abram Smith, July 4, 1859, and on Theodore H. Davis, as garnishees, July 8, 1859. Attachment returned by the sheriff of Fayette county, executed on Patrick Gribbon, June 30, 1852, and S. N. Drake, as garnishees, July 12, 1859."

Of the parties thus shown to have been served with the attachment, none answered except Gribbon. His answer purports to be an answer "to a bill in chancery, exhibited against him and others in the Bourbon circuit court, by A. G. Gower," and sets out the amount of his indebtedness, which he expresses his willingness to pay to whomsoever the court may direct.

In October, 1859, the court rendered a judgment against "the defendant," Gribbon, for the amount shown by his answer to be due from him ; also, a judgment against the appellants, Smith and Davis, for the respective amounts alleged in the petition to be due from them, the judgment reciting that they had each "failed to answer the *petition,* although duly summoned," and that the court received proof of the amount of said indebtedness ; and it was therefore adjudged that the plaintiff recover of the said *defendants* the sums so alleged to be due from them, respectively, to the railroad company, with interest, &c.; and the suit was dismissed as to the defendant, Drake.

In April following the appellants, on regular notice, moved the court to vacate these judgments, on the ground that they were rendered before the action regularly stood for trial. The motions were overruled, and the appellants have brought the case up, insisting that the order overruling their motion to vacate, and the judgment sought to be vacated, were alike erroneous and should be reversed.

The Civil Code has provided two distinct remedies, or modes of proceeding, either of which may be resorted to by the plaintiff in an execution which has been returned by the proper officer either as to the whole or any part thereof, "no property found."

He may institute an action by equitable proceedings, for the discovery of any money, choses in action, and all other property belonging to the defendant, and for subjecting the same to its satisfaction ; and in such action, persons indebted to the defendant in the execution, or holding money or property in which he has an interest, or holding evidences or securities for the same, *may be also made defendants,* (*sec.* 474.)

Or, in the action mentioned, the plaintiff may have an attachment against the property of the defendant in the execution, similar to the general attachments provided for in chapter 3, of title 8, without either the affidavit or bond therein required, &c.

Now, if in this case, the appelle can be considered as having adopted the former of these two modes of proceeding, by making the appellants and other alleged debtors to the railroad company *defendants* in his equitable action ; if it be true, as the appellants insist, that they were proceeded against, in that action, as defendants, and not as mere garnishees, it is very clear that, as to them, the action was prematurely heard, and their motion to vacate the judgments should have been sustained upon that ground.

But it is contended, on the part of the appellee, that he adopted the latter mode of proceeding ; that he neither sought nor obtained relief against the appellants as defendants in the action, but that they were proceeded against, and treated, by him and by the court, as garnishees, and that the judgment was rendered against them in conformity with the rules laid down in the chapter referred to in the 476*th section.*

It is quite evident, we think, upon the face of the petition filed by the appellee, that it was framed with the view of proceeding against the appellants and other debtors to the railroad company, as defendants to the action. They were so designated repeatedly in the body of the petition, and, as already shown, the plaintiff "prays that the aforesaid debtors of said railroad be made *defendants* to *this petition,* and answer the same," &c. The court also, in some portions of the judgment, seems so to have regarded them. They are there styled *defendants,* and are said to have "failed to *answer the petition,* although duly *summoned,*" &c· These, and other circumstances which might be adverted to if it were material, tend strongly to support the position contended for by the appellants, that they were technically and substantially parties defendants to the action, and in that character, and upon their failure to answer the petition, were rendered liable for the debts alleged to

be due from them, severally, to the defendant in the execution.

On the other hand, it is to be observed, that the judgment against the appellants does not appear to have been predicated upon their failure to answer, but upon the additional fact, distinctly recited, that the court *received proof* of their indebtedness to the railroad company. Such proof is required in a proceeding against a garnishee who has been summoned as such, but makes default by not appearing, according to other provisions of the Code, which will be hereafter noticed.

But no *summons* in the action was ever issued against the appellants. The only process ever executed upon them was the order of attachment, the effect of which was to compel them to answer—not as defendants, but as garnishees. The rule of practice was well settled, before the adoption of the Civil Code, that a person who is prayed to be made a defendant, in a bill in chancery, does not thereby become a party. To make him so, process must issue, and service, either actual or constructive, must be had. (*Bond vs. Hendricks*, 1 *Marsh.*, 592.) And the same rule is expressly recognized and re-enacted by *section* 65 *of the Code*, which provides, that "a civil action is commenced by filing in the office of the clerk of the proper court a petition, *and* causing a summons to be issued thereon."

It must therefore be assumed, upon this record, that the appellants were not, in the legal sense, defendants to the action, and the ground upon which they based their motion to vacate the judgment is not maintainable.

And this brings us to the inquiry whether the judgment in question was authorized by the provisions of the Code referred to in *section* 476, and under which the appellee claims to have proceeded.

Such of those provisions as relate to the duties and liabilities of garnishees are to be found in *sections* 244 *to* 248, inclusive.

By *section* 244 the garnishee may pay the money owing to the defendant by him, either to the sheriff or into court, and he shall be discharged from liability to the defendant for any money so paid, not exceeding the plaintiff's claim.

The next succeeding section directs that each garnishee summoned shall appear.   The appearance may be in person, or by the affidavit of the garnishee filed in court, disclosing truly the amount owing by him to the defendant.

Where the garnishee so appears in person he may be examined on oath, and if it shall be thereupon discovered that, at or after the service of the order of attachment, he was indebted to the defendant, the court may order the payment, or security for the payment of the amount owing by the garnishee, *into the court*, or to such person as it may direct, who shall give bond with security for the same; or the court may permit the garnishee to retain the amount owing, upon the execution of a bond with one or more sufficient sureties, to the effect that the amount shall be paid as the court may direct.   Performance of these bonds may be summarily enforced by orders and proceedings as in cases of contempt.   (*Sec.* 246.)

*Section* 247, which is relied upon as conferring upon the court the power to render a judgment such as that now under consideration, is in these words:

"The court may, on the motion of the plaintiff, compel the appearance in person, and examination of any garnishee, or officer of a corporation summoned as a garnishee, by process as in cases of contempt; or, where a garnishee makes default, by not appearing, it may hear proof of any debt or property owing or held by him to or for the defendant, and make such order in relation thereto as if what is so proved had appeared on the examination of the garnishee."

In the case before us, the appellants had been regularly summoned as garnishees; they had failed to appear either in person or by affidavit, and had thereby made default.   The case was strictly within the provisions of the section just quoted.   The court might have coerced their personal appearance in court, for examination.   That, however, was not done, but the other remedy provided for was adopted; the court heard proof of the debt owing by the garnishees to the defendant. Upon the hearing of this proof, what was the next duty of the court?   To render a final judgment in favor of the plaintiff against the garnishees?   Not at all.   The authority of the

court is strictly limited, in such case, to the making of "such
order as if what is so proved had appeared on the examination
of the garnishee." We are, then, to look to the next preced-
ing section for the "order" which the court may make, where
the indebtedness of the garnishee appears on his personal ex-
amination. In such case "the court may order the delivery of
such property, and the payment or security for the payment of
the amount owing by the garnishee into court, or to such per-
son as it may direct, who shall give bond with security for the
same; or the court may permit the garnishee to retain the
property or the amount owing, on the execution of a bond,"
&c. Here we have an enumeration of the several orders
which the court may make, in the state of case provided for,
and at the same time a well defined limitation to the power of
the court. It may order the payment of the amount owing
into court, or into the hands of a receiver, to be appointed for
that purpose, or the garnishee may be allowed to retain the
amount due on the terms prescribed. Beyond this the court
cannot go. The authority to render a final and absolute judg-
ment, in favor of the plaintiff against the garnishee, enforcea-
ble by execution, and beyond the subsequent control of the
court, is neither expressly conferred nor fairly deducible from
any just view of the policy and objects of the statutes regula-
ting these stringent and summary remedies. And if anything
more were needed to demonstrate the correctness of this con-
clusion, it is to be found in *section* 248 *of the Code*, which ex-
pressly provides the mode—and the only mode—in which such
judgment may be obtained. "Upon the service of a summons
upon any garnishee, or after his failure to make a disclosure
satisfactory to the plaintiff, the latter may proceed in an *action*
against him, by filing a petition verified as in other cases, and
cause a summons to be issued upon it; and thereupon such
proceedings may be had as in other actions, and judgment be
rendered *in favor of the plaintiff*, to subject the property of the
defendant in the hands of the garnishee, or for what shall ap-
pear to be owing to the defendant by the garnishee. The
judgment may be enforced by execution or other proper means."
(*Sec.* 248.)

Now, assuming, as is contended, that the court might, upon the mere default of the garnishee, after being summoned as such, have proof of alleged indebtedness to the defendant, and thereupon render a final judgment against him in favor of the plaintiff, for the amount of the debt so proved, why would the legislature have provided, in the very next section, a distinct mode of proceeding, applicable to this precise state of case, carefully guarding the rights of the garnishee by requiring that a *summons* shall be issued upon the petition, and *thereupon* such proceedings to be had as in other actions.

It will be seen that the provisions of the Code we have been considering were intended to apply to cases in which there is an action pending against the defendant, and that many of them are not strictly appropriate or applicable to cases like the present, where there has been a judgment and a return of no property found, and where the whole object is to obtain satisfaction of such judgment. Nevertheless, it is clear that where the plaintiff chooses to avail himself of the privilege given him by *section* 476 to resort to the general attachment there provided for, he must pursue the remedy subject to any inconvenience or incongruity which may arise in its application to his case.

Our conclusion therefore, is, that the judgment complained of was unauthorized, for the reasons stated, and it is therefore reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

M. C. JOHNSON, for appellee, presented a petition for rehearing, and cited *Civil Code, secs.* 245, 246, 247, 248, 250.

JUDGE DUVALL DELIVERED THE FOLLOWING RESPONSE TO THE PETITION FOR REHEARING:

The argument in support of the petition for rehearing proceeds upon a misconception of the points really decided in the opinion.

The court did not decide, that upon the failure of a garnishee to appear and disclose the amount of his indebtedness, and proof thereupon made of its amount, it would be error to

Smith, &c. vs. Gower.

apply the attached debt in payment of the judgment or debt sued on, without a separate suit against the garnishee; or, in other words, that no final order could be made against the garnishee, applying the debt in his hands, without suit against him. No such doctrine is intimated in the opinion.

On the contrary it is expressly decided that, in the case stated, the court may make orders against the garnishee, *but only such orders* as are authorized by *section* 246. It may order the payment of the amount owing by the garnishee into court, or into the hands of a receiver; or the garnishee may be allowed to retain the amount due on the terms therein prescribed. Where does the court get the power to do more than one or the other of these three things? And is not the power of the court to make such orders, and to compel the garnishee to obey them, as potent and effectual a remedy as the plaintiff would have a right to ask? If he preferred a different form of relief he should have adopted a different form of remedy. The law provided two other very plain remedies, by resorting to either of which he would have entitled himself to just such a judgment as was erroneously given in this proceeding. (*Sections* 474, 248.) But he chose to adopt the proceeding authorized by *section* 476, and now complains that that proceeding was not precisely adapted, in all its details, to his case, and therefore insists that the court had a right to transcend its legal powers so as to give him relief in a more appropriate form.

We concur with the counsel, that the Code does not require the plaintiff to institute a regular action against a garnishee, where he had truly disclosed the debt, or where the amount of the debt had been proved. In either of these cases he may be proceeded against as provided in *section* 246, *but in no other way*, unless the plaintiff should desire to obtain the judgment as authorized by *section* 248, and to obtain that he must do what that section requires.

It is insisted that when the case—as in this instance—is ready for a final order applying the attached funds to the plaintiff's debt or judgment, when the garnishee makes the disclosure, or the amount of his indebtedness is proved, there is no necessity for the provisional orders required by *section* 246,

and that the attached funds should at once be disposed of by final order as provided in *section* 250. But what sort of final order does that section provide ? Does it provide for a judgment in favor of the plaintiff against the garnishee for the amount of his indebtedness ? Certainly not. That section provides, that where judgment is rendered for the plaintiff the court shall apply, in satisfaction thereof, "the *proceeds* of the debts and funds attached in the hands of the garnishees," clearly implying that the *proceeds* shall have been placed under the control of the court by some one of the provisional orders prescribed in *section* 246.

The sum of the whole matter is this.: Where the garnishee has been summoned, and appears, and discloses the amount of his indebtedness to the defendant, or where he makes default by failing to appear, and the court, as it may do, hears proof as to the amount of his indebtedness, he may be ordered to pay the amount into court, or to a receiver, or may be allowed to retain it on the terms fixed by law. The court may make either of these orders, at its discretion, and as the circumstances of the case may render most appropriate, and may by its process, of rule and attachment, compel the garnishee to obey and perform its mandate as in other like cases. If, at the time the garnishee so discloses, or the amount of his indebtedness is so proved, there is a judgment against the defendant to which the indebtedness can be immediately applied, the appropriate order would be to require the garnishee to pay the fund into court, and when paid the proceeds applied as directed in *section* 250.

Whether the orders authorized by *section* 246 are to be considered as so far final as to preclude the garnishee from showing cause against their enforcement, is a point which the case did not present, 'and which was not decided in the opinion. Nor does the opinion decide or intimate, as counsel suppose, that these orders were intended as a sort of *double warning* to the garnishee ; and it may be admitted that there is no analogy to be found in the Code for such double warning. But where, we ask, is there any analogy to be found in the whole Code, or in any other system of jurisprudence, for a final

judgment, as in an ordinary action, against a person who was not sued, who was not a party to the action, and against whom there was neither allegation nor prayer for relief?

It is essential to the consistent and harmonious working of the system of practice which the Civil Code embodies, that its forms and modes of procedure—especially those which regulate what are called *provisional remedies*—should be strictly conformed to. A general attachment, for instance, can be obtained only by a strict compliance with the conditions upon which the law gives that particular form of remedy. The omission of any one of the prescribed conditions will be fatal to the proceeding. The court does not stop to inquire whether the variance between the facts sworn to by the plaintiff in his affidavit, and those required to be sworn to, is material, or is injurious to the adverse party, but the question is, is there a variance? If so, the proceeding will be pronounced defective. It is not necessary to refer to the numerous cases showing the degree of strictness required in conforming to the terms upon which this special proceeding is allowed. Can any reason be shown for not requiring something like the same strictness of conformity to the rules which prescribe the mode and measure of relief to be granted under this special proceeding? Shall the courts, by construction, abrogate the distinctions which the law has wisely established between the responsibilities of a mere garnishee, in a special proceeding, and those of a defendant in an action?

The law provides that a *garnishee* shall incur certain responsibilities, which are to be enforced in a certain and well defined mode. Why not adhere to this mode? What apology can there be for utterly disregarding these plain provisions of the law, by sanctioning a form of judgment against a *garnishee* to which a *defendant* in an action can alone be subjected?