**Alan T. NORTON, Executor of the will of Cyril D. NORTON, Plaintiff**[1]

**vs.**

**Lynn C. MURPHY, Defendant**

**No. 101789**

Land Court Department
Trial Court of the
Commonwealth of Massachusetts

**February 4, 1982**

Mitchell S. Ross, counsel for plaintiff.
George H. Lebherz, Jr., counsel for defendant.

### DECISION

The plaintiff, Alan T. Norton, as executor of the will of his father, Cyril D. Norton, brought this complaint pursuant to the provisions of Massachusetts General Laws, Chapter 231A, § 1 for a determination of the rights and interests of the parties in a certain parcel of real estate situated in Chilmark, in the County of Dukes. The defendant, Lynn C. Murphy, of said Chilmark, is the former brother-in-law of the plaintiff. In his answer the defendant claimed title to locus by adverse possession.

---

1. The complaint was brought in the name of Alan T. Norton, as executor of the estate of Cyril D. Norton, but it is more unusual to describe the fiduciary capacity of the plaintiff as it appears in the heading.

A trial was held in the Land Court on November 10, 1981 at which a stenographer was appointed to record and transcribe the testimony. All exhibits introduced into evidence are incorporated herein by reference for the purpose of any appeal. At the commencement of the trial the parties presented the court with a stipulation that the record title to the land involved in the dispute and referred to as the "Hilltop" lot in the complaint was in the plaintiff. It generally is referred to in the decision as the "locus". The stipulation also provided that the land was in Chilmark and set forth the metes and bounds description as follows:

"BEGINNING at a pipe set at the most northerly point of land of the Defendant herein;

THENCE one hundred seventy eight (178) feet more or less in a general north northwesterly direction to a point and wall called King Wall;

THENCE following the King Wall in a general westerly direction two hundred ninety-nine and 15/100 (299.15) feet more or less to a travelled way approximately fourteen (14) feet wide;

THENCE following the travelled way in a general southerly direction approximately two hundred forty (240) feet more or less to a white rock in an existing stone wall and a right of way;

THENCE following the right of way in a general southeasterly direction approximately sixty-five (65) feet more or less to an iron pipe set;

THENCE in a general northeasterly direction approximately three hundred seventy-three and 63/100 (373.63) feet more or less by land of Valerie N. Murphy and Lynn C. Murphy to point of beginning.

Containing approximately two acres more or less.

Said land is encompassed in, and part of, land described in deed from Reginald B. Norton, Cyril D. Norton, and Muriel C. Smith to Goldie G. Norton dated November 23, 1945, acknowledged February 25, 1946, and recorded March 9, 1946 in the Dukes County Registry of Deeds, Book 210, Page 526."

After the introduction of the stipulation and an opening by the plaintiff's counsel, the plaintiff rested. The defendant's counsel then made an opening after which the defendant and two residents of Chilmark who are friends and business acquaintances of the defendant testified. The plaintiff then called two rebuttal witnesses.

On all the evidence I find and rule as follows:

1. The defendant married Valerie Norton on January 29, 1949 in Boston, and seven children were born of the marriage. The first child was born on November 20, 1949. The couple was divorced in 1976. The defendant has remarried, and also has children by his second wife.

2. In 1954 or 1955 the defendant and his wife Valerie moved to Martha's Vineyard and attemped to find a business to purchase. One venture which was considered was the purchase of a boat yard in conjunction with one of Mrs. Murphy's cousins; each of the two partners was to contribute $5,000. This transaction was never consummated.

3. Under date of August 2, 1955, the defendant and his mother-in-law executed a promissory note to the Edgartown National Bank in the amount of

$5,000 (Exhibit No. 2). The note was paid in full on December 24, 1957 by the defendant. Valerie Murphy testified in rebuttal that these moneys were borrowed to be used as the Murphys' contribution to the boatyard purchase and that when it was not consummated, the sum of $1,500 was paid to her mother for the purchase of nonlocus property adjacent to the Hilltop Lot with the balance expended for Murphy living expenses and materials for the construction of their home. The defendant had previously testified that the balance of the $5,000 was used to purchase construction materials for Mrs. Norton's home and represented the purchase price of the land in dispute. In her testimony, Valerie Murphy denied this. I find the rebuttal testimony to be more convincing.

4. By deed dated September 10, 1955 and recorded with Dukes County Registry of Deeds on January 27, 1956 in Book 230, Page 85 (Exhibit No. 3)[2] Goldie G. Norton, the defendant's mother-in-law, conveyed to him a parcel of land in Chilmark adjacent to the locus. The premises were conveyed with an appurtenant right of way over remaining land of the grantor and with the benefit of a right to "drive" for water thereon and subject to the grantor's reserved right to "drive" for water on the granted premises. It was in response to a request by Valerie Murphy and upon payment of $1,500 that this conveyance was made.

5. Later in 1956 Mrs. Norton gave the defendant a confirmatory deed to the same land conveyed to him by the deed dated September 10, 1955 and duly recorded in Book 230, Page 452. (Exhibit No. 4). The description in the confirmatory deed referred to a plan entitled "Plan of Land in Chilmark, Mass. Surveyed for Lynn C. Murphy, March 3, 1956, Scale 1"=50', Hollis A. Smith, M.S. Reg'd. Land Surveyor, Vineyard Haven, Mass." This plan was not introduced into evidence, but it would appear to have been very similiar to the plan which is Exhibit No. 1 without the subdivision into the two lots which appears thereon. This deed also contained the grant of a right of way, made provision for water and added the right to install, maintain and replace a pole line for the transmission of power and intelligence. The defendant contends that it was his belief that this deed conveyed the present locus rather than confirming the earlier grant.

6. The defendant and his wife Valerie built a home, incorporating as part thereof, a motor trailer, on the premises conveyed by Valerie Murphy's mother to the defendant. The well or pump house was located on the locus and the cesspool may be.

7. The defendant in the intervening years from 1955 or 1956 to the present, had a shop on his own land. There is no dispute that in the same time span the defendant stored motor vehicles, boats and trailers which he either owned or undertook to repair for third parties on the adjoining lot, i.e. the locus. Over the years he has prevented outsideres from parking on the locus to attend Little League games in an adjacent baseball diamond. He has never paid real estate taxes on the locus and does not claim otherwise.

8. Mrs. Norton died in 1957, and apparently record ownership of the locus passed to her husband, Cyril. Her husband lived in Chilmark for the remaining twenty years of his life. He visited the Murphys nearly daily to enjoy their television set as well as presumably the company of his daughter and grandchildren. He and the defendant were not on good terms and rarely spoke. Valerie Murphy always approached her father with any request made by the Murphy family. Mr. Norton was said to have remarked that he did not mind the defendant using the locus so long as the Norton family didn't wish either to use or sell it, but he wished that "Lynn were a little bit more neat about it." Valerie Murphy did

---

2. Unless the context otherwise suggest, all recording references herein are to the Dukes County Registry of Deeds.

inquire from her father several times about the possibility of his selling the locus to the defendant, but he declined. He stated that he was reluctant to sell the land at all, but if he were forced by circumstances to do so, it was his belief that a higher price would be obtained from an outsider who was not a family member.

9. Valerie and Lynn Murphy were divorced in 1976, but they separated earlier - in the spring of 1974. In the divorce settlement, the defendant conveyed to Valerie Murphy title to a portion of the land purchased from her mother in 1955-6. The deed is dated August 11, 1977, is recorded in Book 370, Page 471, and conveys Lot 1 on a plan entitled "Plan of Land in Chilmark, Mass. Surveyed for Lynn C. Murphy", dated June 1, 1977, by Dean R. Swift. (Exhibit No. 1). A copy of this plan is attached hereto. The house on Lot 2 is the defendant's present home where he formerly lived with Valerie; his former wife now lives in the dwelling on Lot 1. The locus about which this dispute is centered is situated northwesterly of Lots 1 and 2 and is marked "N/F Goldie G. Norton" on Exhibit No. 1.

10. At the time of the divorce the defendant did not list title to the locus as an asset. The plan which was prepared to accompany the conveyance of Lot 1 to Valerie Murphy gave the name of the owner of the adjoining land as now or formerly of Goldie G. Norton. This does not estop the defendant from now claiming he had acquired title, but there is some evidence that he did not so allege in 1976 or 1977.

11. After the death of Cyril D. Norton, his executor, the plaintiff, discussed the sale of locus with the defendant who claimed that he had an option from Goldie G. Norton to purchase it. The plaintiff obtained a buyer for the land and a probate court license to sell it. The defendant originally brought a complaint in the superior court to quiet title, but has now dismissd said case in view of the counterclaim in this proceeding. Demand for possession was made by the plaintiff in November of 1980 and refused by the defendant. The defendant testified that were he to be required to rent other land for the purposes for which he used locus, the rent would be approximately $500 per annum.

The parties have stipulated that record title to the property in dispute is in the plaintiff. The defendant has attempted to defeat the record title by claiming to have acquired superior title thereto by adverse possession. The law as to adverse possession is well settled in Massachusetts. "Acquisition of title through adverse possession is a fact (citations omitted) to be proved by the one asserting the title. The burden of proof extends to all of the necessary elements of such possession and includes the obligation to show that it was actual, open, continuous and under a claim of right of title." **Holmes v. Johnson,** 324 Mass. 450, 453 (1949). Moreover, the use must be non permissive. **Ryan v. Stavros,** 348 Mass. 251, 262 (1964), notorious, exclusive and adverse for more than twenty years. **Kershaw v. Zecchini,** 342 Mass. 318, 320 (1961). If any of these elements of adverse possession is left in doubt, the claimant cannot prevail. **Mendonca v. Cities Service Oil Co.,** 354 Mass. 323, 326 (1968).

The plaintiff admits that the defendant has used the locus for the storage of his own personal property or that of which he is bailee and that the defendant has kept third parties off the grounds. However, the plaintiff contends that the use by the defendant was not adverse to the record owners, initially Goldie G. Norton and thereafter Cyril D. Norton, but was with the permission of the record owners. The plaintiff points to the doctrine adopted in other states that there is a greater burden of proof in establishing adverse possession as against a family member and suggests it worthy of consideration here although he recognizes that it has not been articulated in Massachusetts. That, of course, is the rule as to the analogous situation of tenants in common in this Com-

monwealth. In such an instance entry and possession by a tenant in common is presumed to be pursuant to his interest in the premises and not adverse to his co-tenants absent some unequivocable action on his part notorious enough to constitute notice, actual or constructive, of ouster to the co-tenant. **LeFavour v. Homan,** 3 Allen 354 (1862). **Hunt v. Hunt,** 3 Metc. 175 (1841).

The present case would seem to fall within the umbrella of the decisions in the case of tenants in common. It seems clear that the defendant's occupation of locus was tolerated by the record owners so long as he was married to their daughter. After Valerie Murphy and the defendant were divorced in 1976, the defendant's possession may have become adverse. Up until that time, however, it would appear that his activities were consensual and title was assumed by all to still be in his parents-in-law. The real estate taxes were paid by the Nortons, not by the defendant. He undertook to buy the locus, but Mr. Norton did not wish to sell it. While not conclusive since it may be viewed either as an admission or merely as an attempt to perfect title without litigation (see **Warren v. Bowdran,** 156 Mass. 280 (1892) it is indicative that the Nortons permitted the defendant's use, and everyone so understood the situation. The law is well established that "...an adverse right cannot be gained from permissive enjoyment, or mere accommodation..." **Bigelow Carpet Co. v. Wiggin,** 209 Mass. 542, 548 (1911). And if the original entry is permissive, the presumption is that any subsequent occupation is also permissive and not adverse unless some act is proved that would constitute a disseisin of the owner. **Hall v. Stevens,** 9 Metc. 418 (1845). It may well be that the divorce between the defendant and Valerie Norton Murphy constituted the act that changed the nature of the occupancy to adverse, but if so, it is far too recent for the running of the necessary period of twenty years to have resulted into title in the defendant.

There is a detailed discussion in **Ivons-Nispel, v. Lowe,** 347 Mass. 760 (1964) of the nature of adverse use in the case of prescription with the distinction between implied acquiesence and permission emphasized by the Court. It is pointed out that there may be adverse possession where there is possession with the forebearance of the owner who knew of such possession land and did not prohibit it but tacitly agreed thereto. The facts in the present case are different. The defendant did not claim until recently either that Mrs. Norton was to give him a deed of locus or that he had occupied the land adversely to the record owners. Rather he recognized their title, attempted at times to purchase the property, constructed the well house and road on locus, if he did, and caused utilities to cross it in accordance with rights granted to him in the deeds. He was married to the daughter of the record owners, he and his wife lived in the adjacent property on which his shop was located, his wife assisted him in his business, and the course of conduct of the parties for the twenty-year period in question was one of permissive use of his relatives' land. Accordingly, I find and rule on all the evidence that the defendant has not borne his burden of establishing the acquisition of title to locus by adverse possession.

I further find and rule in accordance with the stipulation that record title to the "Hilltop" lot hereinbefore described is in the plaintiff free of any claims of the defendant, other than the easements of record set forth in the deeds to or from him and the right to maintain, repair and replace any septic tanks, leaching fields or cesspools now on the locus and that the defendant should remove his personal property and that of third parties claiming under him from the locus within thirty days from the date hereof.

No damages or costs are awarded.

Judgment accordingly.

**Marilyn Sullivan, Justice**