HERBERT E. WEBSTER, administrator, *vs.* CITY OF LOWELL.

Middlesex. March 26. — July 3, 1886. W. ALLEN & HOLMES, JJ., absent.

At the trial of a petition for the assessment of damages occasioned to land of the petitioner's intestate by the discontinuance of a street, it appeared that the intestate acquired title to the land under a deed from the petitioner. The petitioner was asked, on cross-examination, if, at any subsequent time before the death of his intestate, he owned said land, or had received a deed of it from any person; to which he answered in the negative. He was then asked· if he did not, after the execution of the deed by him to his intestate, and about the year 1880, give a deed of said land to one R., and in said deed covenant that he was the sole owner thereof; to which he replied that he did not give such a deed, and that, if he did, it was a mistake. The respondent, for the purpose of

contradicting the petitioner's testimony, then offered in evidence the record of a deed of said land from the petitioner to R., given in 1880, and covenanting that the grantor was the sole owner in fee of the land. No objection was made that the original deed was not produced. *Held,* that the evidence offered was properly excluded.

At the trial of a petition for the assessment of damages occasioned to land by the discontinuance of a portion of a street, the petitioner contended that he had acquired by prescription a right of way over a passageway throughout its entire length from said street to a parallel street. The judge refused to rule, as requested by the respondent, that, in estimating the damages, "no part of the discontinued portion of said street except that on which said passageway abutted should be taken into account." *Held,* that the respondent had no ground of exception.

At the trial of a petition for the assessment of damages occasioned to land by the discontinuance of a portion of H. Street, there was evidence of the existence of a passageway from H. Street to T. Street, a parallel street; that the petitioner's land abutted on H. Street and on a portion of the passageway; and that gates and other barriers at different times had been erected across the passageway at places between the two streets, or at the T. Street end; but no witness testified that any gate or other barrier had ever been placed in that part of the passageway between H. Street and the rear of the petitioner's premises, or that his use of the way had ever been interrupted. The judge instructed the jury, that, if they found that the petitioner, as the owner of the land, had acquired a right of way to and from H. Street over the land which abutted upon the discontinued portion of H. Street, "it was immaterial whether he had a right to pass to and from T. Street or not." *Held,* that the respondent had no ground of exception.

At the trial of a petition for the assessment of damages occasioned to land by the discontinuance of a portion of a street, the petitioner contended that he had acquired by prescription a right of way over a passageway leading from said street to a parallel street. There was evidence of an open and adverse use of the way under a claim of right for more than twenty years by the owners of the land described in the petition; and there was evidence for the respondent that the owners of the servient estate had from time to time interrupted the use of the way by the petitioner and his predecessors in title. After the evidence on both sides was closed, the respondent asked the judge to rule that there was not sufficient evidence to warrant the petitioner in going to the jury. *Held,* that this request was rightly refused.

A petition for the assessment of damages occasioned to land by the discontinuance of a portion of H. Street alleged that the land was situated on the northeasterly side of H. Street in a certain city, (describing it by metes and bounds,) "together with a passageway upon the northerly side of the premises." At the trial, the petitioner contended that he had acquired by prescription a right of way over a passageway throughout its entire length from H. Street to a parallel street. *Held,* that proof of a right of way only to and from H. Street was not inconsistent with the allegation in the petition.

If a private way is laid out for the use of the tenants of an estate abutting thereon, the owner of another estate also abutting thereon may acquire a right of way therein by adverse use, although his use is of the same character as that of said tenants, and does not interfere with their use.

On the issue whether a right of way had been acquired by the petitioner by adverse use, the respondent requested the judge to rule, that, if the way was laid

out for the benefit of an estate other than that of the petitioner, and was used by the tenants of such estate, and by those having dealings with them, and was also so used continuously, with the knowledge and consent of the owner, by all persons having occasion to pass through the same, including the petitioner, the petitioner could not acquire a right of way over the same by adverse use. The judge said that, if by the terms " knowledge and consent " was meant an express consent or permission, as distinguished from a silent acquiescence in or failure to object to an asserted right by the petitioner, the court would grant the request; otherwise, it would be refused. *Held,* that the respondent had no ground of exception.

If the owner of land, abutting on a street in a city, has acquired a right of way by adverse use over a strip of land at the side of his lot, which extends to the street, he may maintain a petition against the city for the assessment of damages occasioned by the discontinuing of the street opposite such strip of land, although the owner of such strip owns the fee in the part of the street which is discontinued.

PETITION to the Superior Court, by the administrator of the estate of Mary E. Webster, for a jury to assess the damages alleged to have been occasioned to said estate by the discontinuance of a portion of Hanover Street in Lowell. The petition alleged that said Mary E. Webster was, in her lifetime, and had been from July 10, 1875, seised and possessed of certain real estate, to wit, a certain parcel of land with the buildings thereon and the passageway appurtenant thereto, situated on the northeasterly side of Hanover Street, a public street in the city of Lowell, (then followed a description of the land by metes and bounds,) together with a passageway upon the northerly side of the premises; and that while the said intestate was the owner and seised in fee of said land and buildings, and during her lifetime, the city of Lowell, by a resolution duly passed by the city council thereof on October 25, 1881, discontinued a portion of Hanover Street, upon which said portion so discontinued said real estate abutted; and that by so discontinuing said portion of Hanover Street, as set forth in the resolution, Mary E. Webster suffered damage in and to her said estate.

Trial in the Superior Court, before *Knowlton,* J., who allowed a bill of exceptions, in substance as follows :

It appeared that Hanover Street was a public street in Lowell, crossing Moody Street, a public street and main thoroughfare, at about a right angle therewith, and extending therefrom northerly about three hundred and twelve feet to the premises of the Tremont and Suffolk Mills, a manufacturing corporation, in

Lowell, and was duly laid out as a public street on December 13, 1853; that the real estate owned by the petitioner's intestate was situated on the easterly side of Hanover Street, at a point lying between Moody Street and the premises of the Tremont and Suffolk Mills, and having a frontage on said street of thirty-two feet; that between said real estate and Moody Street, and on the same side of Hanover Street, there was other land occupied by buildings owned by various other persons; and that, on the side of Hanover Street opposite to the real estate of the petitioner's intestate, there were no buildings of any kind, but there was a canal, which passed under Moody Street, and thence, by the westerly line of Hanover Street, to the premises of the Tremont and Suffolk Mills.

On October 25, 1881, the city council of Lowell passed a resolution, as follows: " Resolved, that the portion of Hanover Street from a point opposite the southwesterly side of the Tremont and Suffolk Mills' new storehouse, on the easterly side of said street, and extending eighty-five and eight tenths feet in a northeasterly direction to the terminus of said street, as laid out by resolution passed December 13, 1853, be, and the same is hereby, discontinued as a public highway." No question was made as to the validity of the proceedings for the discontinuance of this street. The real estate of the petitioner's intestate did not abut on the discontinued portion of Hanover Street, but it lay to the south of the line of discontinuance, as fixed in said resolution, by about eight feet and eleven inches, and towards Moody Street; but the petitioner contended that his intestate, and those under whom she claimed, had acquired by prescription, and not otherwise, a right of way, of the width of about twelve feet and of the length of about one hundred and eighty feet, over the land lying to the north of her real estate, throughout its entire length from Hanover Street to Tremont Street, a street running parallel with Hanover Street, and also extending northerly from Moody Street, and that the outlet of said way would be narrowed from about twelve feet to about eight feet and one inch by the discontinuance of that portion of Hanover Street discontinued, and that a strip of said passageway lying on the side thereof farthest from the northerly line of the premises of the petitioner's intestate, of the width of about three feet

and eleven inches, abutted on that part of Hanover Street discontinued.

It appeared that the land over which the petitioner contended that his intestate, and those under whom she claimed, had acquired a right of way, was owned in the year 1845 by the proprietors of the Tremont Mills, a manufacturing corporation established in Lowell; that it was a part of a large tract of land then owned by said proprietors, all of which was then vacant and unoccupied by any buildings, as was the land of the petitioner's intestate at that time. In the year 1846, the proprietors of the Tremont Mills built a brick tenement block on their land, extending from Hanover Street to Tremont Street; in the rear of said block were yards connected therewith, and still farther in the rear of said block was a continuous row of sheds connected therewith, of the same length as said block and running parallel with it; the remainder of their land lying between said row of sheds and the northerly line of the premises of the petitioner's intestate and the northerly line of the land adjoining said last-named premises, and lying between the same and Tremont Street, was left open by said proprietors, and, from the time said block was built, the land so left open constituted a passage-way, and was always used by the tenants and employees of said proprietors, and of said Tremont and Suffolk Mills, their grantee, dwelling in said brick block, to pass and repass through the same to and from their respective tenements, and by those having business or dealings with them, and by all persons having occasion to pass and repass through the same. On the land of the petitioner's intestate a dwelling-house was erected by one of her grantors after said brick block was built. The line of said dwelling-house, as the same extended back from Hanover Street towards the rear of said land, as well as the line of a shed which was attached thereto in the rear, was within two feet and three fourths of an inch of the northerly line of said land, thus leaving a strip of said land two feet and three fourths of an inch wide on the northerly side of said dwelling-house, extending from the front of the petitioner's intestate's land on Hanover Street to the rear thereof, and being a part thereof, and running parallel with said strip of land so left open by said proprietors, which said strip two feet and three fourths of an inch wide always remained open

and unenclosed. On the southerly side of said dwelling-house no structure of any kind was ever erected, and access was and could be had from Hanover Street to the rear of the premises over the land lying between the southerly line of said dwelling-house and the southerly line of the petitioner's intestate's land so unoccupied, which was of sufficient width to admit the passage of a horse and wagon.

The petitioner introduced evidence tending to show that, from about 1854, there was a door on the northerly side of said dwelling-house, with a door-step about eighteen inches wide in front of the same resting on the ground; that beyond that and farther towards the rear of the premises was a gate in a shed attached to said dwelling-house, which when opened swung out from the shed four or five feet, and in part over said passageway; that the owners and occupants of said dwelling-house, during the time said door and gate had been as above stated, used the same in passing to and from said house and shed, and had during said time passed to and from the same over said strip two feet and three fourths of an inch wide, and over and through said passageway of said proprietors, so left open, its entire length from Hanover Street to Tremont Street; that all persons having business or dealings with them had also used said passageway and said strip, both for travel by teams and on foot, to pass and repass through and over the same to and from said dwelling-house since said time; that the upstairs tenement in said dwelling-house was reached only by means of said door during a large part of the time since said house was built; that the larger part of the business and dealings of the several owners and occupants had been in the direction of Tremont Street; and that thereby the travel through and the use of said passageway were greater by said owners and occupants to and from Tremont Street than to and from Hanover Street, but the petitioner's intestate and her grantors had used the passageway continuously in both directions ever since the house was built, except as hereinafter appears.

All of the petitioner's witnesses testified that the use made of said passageway by the several owners and occupants of said dwelling-house had not been different from the use made of the same by the tenants and employees of the proprietors of the

Tremont Mills, and of their grantee, the Tremont and Suffolk Mills, dwelling in said brick block; and that such use had in no way interfered with, interrupted, or abridged the use made of the same by said tenants and employees.

One of the petitioner's witnesses, Ebenezer D. Webster, testified, on cross-examination, that, about the year 1855, Charles L. Tilden, the agent of the proprietors of the Tremont Mills, put up a fence or gate across said passageway in about the middle thereof, but beyond the rear line of the petitioner's intestate's land towards Tremont Street, and that the same remained closed for a short time; but that, although he had been familiar with said passageway ever since 1854, he knew of no other gate or fence being placed across said way except one in 1880, hereinafter referred to.

Another of the petitioner's witnesses testified that, in the year 1854 or 1855, Tilden put a gate or fence across said passageway, about midway in the same, and that it was kept up and closed for a time, and prevented travel through said passageway while so kept up and closed; but that, although he had been familiar with the said passageway ever since 1845, and lived near by the same, he knew of no other gate or fence being placed across said way except in 1880, as hereinafter referred to.

Of the respondent's witnesses, one Isaac H. Demming testified that he lived in said brick block from 1847 to 1868, and that during said time he was in the employ of the proprietors of the Tremont Mills; that, between 1856 and 1858, Tilden, whom he knew as the agent of said proprietors, put up a gate across said way, said gate being attached to said row of sheds on the one side and closed against a fence on the opposite side of said way, and kept the same in that position and locked for several weeks; that Tilden notified the tenants in said brick block, that, if they desired to open the gate for any purpose, they could get the key to the same at the counting-room of said proprietors; that in the year 1855 he heard a conversation between the agent of said proprietors, whom he knew, and one George L. Putnam, who then owned the premises of the petitioner's intestate, and under whom she claimed, in which conversation Putnam complained of certain acts of third persons with whom said agent was connected in business; that, in answer to Putnam, the agent said

substantially, "If you say much about that, I will build a fence here," pointing to said passageway, "as high as the eaves of your house," and to this Putnam made no reply; and that during the time the witness lived in said brick block there was on his shed, which was the end shed in said row, abutting on said Hanover Street, a board sign with the words "Private Way" painted thereon.

Another of the respondent's witnesses, one W. C. Lamson, testified that he lived in said brick block from about 1858 to 1869; that, in 1860 or 1861, a gate was put up across said passageway and kept closed from two to four weeks; that at each end of said passageway there were signs or notices on said row of sheds, bearing the words, "Private Way and dangerous, by order of the Mayor and Aldermen," during the time he lived in said block.

Another of the respondent's witnesses, one John Southwick, testified that he lived in said brick block, as one of the tenants and employees of said proprietors, from about 1860 to 1879; that, about the year 1860 or 1861, a gate or fence was placed across said way, about middle way thereof, and kept closed for from two to four weeks; that the hinges of said gate were attached to said row of sheds, and that said gate was shut against a post on the opposite side of the passageway; that the gate was put up by Tilden, who was then the agent of said proprietors; that during the time the witness lived in said brick block there were notices attached to both ends of said row of sheds in said passageway, bearing the words "Private Way"; and that said notices were put up by Tilden.

Another of the respondent's witnesses, one Oliver Flint, testified that he was familiar with said passageway, and had been for many years; that, about the year 1860, there was a gate or fence across the same; and that said gate or fence was kept closed across said passageway for a considerable time, and prevented travel through the same.

Another of the respondent's witnesses, one Charles L. Belden, testified that, in 1862, there was a gate across said passageway; that the same was closed at times, and was frequently shut at night; and that the same, when so closed, prevented travel through said passageway.

There was no evidence that the petitioner's intestate, or those under whom she claimed, or any persons acting for her or them, had ever placed a gate, fence, or barrier of any kind across said passageway, and there was no other evidence than as above stated relative to gates, fences, or barriers across said way ; but no witness testified that any gate or other barrier had ever been placed in that part of the passageway between Hanover Street and the rear of the premises of the petitioner's intestate, or that her use of that portion of the passageway, or that of former owners of her estate, had ever been interrupted.

It was not disputed that, in the year 1880, the Tremont and Suffolk Mills, the grantee of said proprietors, placed and has ever since maintained a gate across said passageway at the Tremont Street end thereof, and has kept the same closed.

There was evidence introduced by both parties tending to show that there were vaults projecting from said row of sheds into said passageway, at intervals, throughout its entire length. Some of the petitioner's witnesses testified that said vaults were of the height of about ten inches above the surface of said passageway, and projected into it from two and one half to three feet. Some of the respondent's witnesses testified that said vaults were of the height of eighteen inches above the ground, and projected into said passageway four feet.

It was not disputed that said proprietors and their grantee, the Tremont and Suffolk Mills, had always cleaned said passageway, and kept it in repair.

There were no other buildings on the side of said passageway, opposite said row of sheds, throughout its entire length, than said dwelling-house and the shed attached thereto.

The petitioner's intestate acquired her title to said real estate under a deed from the petitioner to her, dated December 1, 1876. The petitioner, on cross-examination, was asked, as bearing on the question of his intestate's title to said estate, if, at any subsequent time before the death of his intestate, he owned said estate, or had received a deed of it from any person; to which he answered in the negative. He was then asked, on cross-examination, if he did not, after the execution of said deed by him to his intestate, and about the year 1880, give a deed of said estate to one Naomi Richards, and in said deed covenant that he was

the sole owner thereof; to which he replied, that he did not give such a deed, that, if he did give such a deed and so covenant, it was a mistake, but that he knew that he did not give such a deed and so covenant.

The petitioner expressly waived all objections to the production in evidence of a record copy of said deed to Naomi Richards, upon the ground that the original should be produced, but did not waive objections to the admission thereof on any other ground; and the respondent called as a witness the register of deeds for the district in which said real estate is situated, and offered to show by him and the records in his custody, for the purpose of contradicting the petitioner in his testimony, that the petitioner, in the year 1880, which was before the death of his intestate, made to one Naomi Richards a deed of said real estate, and covenanted therein with her that he was the sole owner in fee of said real estate; but the judge excluded the evidence.

One of the petitioner's witnesses, who was called and qualified as an expert in real estate values, testified to the amount of damage in his opinion caused by the alleged discontinuance of Hanover Street, and stated that, in forming such opinion, he took into his calculations that part of the alleged discontinued portion of Hanover Street lying beyond the passageway towards the northerly end of Hanover Street.

The respondent requested the judge to rule that, in estimating the damages alleged to have been caused as aforesaid, no part of the discontinued portion of said Hanover Street except that on which said passageway abutted should be taken into account. The judge refused so to rule.

After the evidence on both sides was closed, the respondent requested the judge to rule, upon the above evidence, that the petitioner had failed to maintain his petition, having introduced no sufficient evidence, as the respondent contended, to warrant him in going to the jury upon the question of its liability to respond in damages for the discontinuance of Hanover Street. The judge refused so to rule.

The judge submitted to the jury, among other things, the question whether the petitioner's intestate had acquired a right of way by prescription over that part of the passageway which

abutted on the discontinued portion of Hanover Street; and instructed them that, if they found that gates and barriers were placed across said passageway, between the premises of the petitioner's intestate and Tremont Street, by the owners of the land over which it passed, at various times, as contended by the respondent, that fact might be considered and given such weight as they thought it entitled to upon the question whether the petitioner's intestate had acquired a right of way over that portion of the passageway abutting upon Hanover Street; but, if they found that she had acquired such right over that land which abutted upon the discontinued portion of Hanover Street, it was immaterial whether she had a right to pass to and from Tremont Street or not.

The respondent requested the judge to instruct the jury as follows: "1. If the jury find that, in 1854 or 1855, a fence or gate was placed across the way in question by Tilden, the agent of the owners of the fee, and that again, in 1861 or 1862, a fence or gate was again placed across the way in question by the agent of said proprietors, and that a fence or gate was placed across the way in 1880 by the said proprietors or their agents, then the use of the way by the petitioner's intestate and her grantors was permissive, and not adverse, and the petitioner is not entitled to damages. 2. If the jury find that the way was laid out by the proprietors of the Tremont Mills for the use of their tenants and employees, and that it has been used by such tenants and employees, and that the use of the way by the owners and tenants of the Webster estate has been of the same character, and has not been such as to interfere with or abridge the use of the way by the tenants and employees of the Tremont Mills, then such use was permissive, and not adverse, and the petitioner cannot recover. 3. In estimating the damages, if any, the jury are not to consider that part of the discontinued portion of the street which lies beyond the farther line of the passageway, opposite the Webster house. 4. If the jury find that the way in question was opened in the year 1846 by the owners of the land over which it passed, when they built their brick block of tenement houses opening through the yards and sheds connected therewith into said way, and that from that time forward said way had been used continuously by the

tenants of said owners living in said block, and the tenants of those claiming under said owners, to pass and repass through the same, and that the said way had always been used by those having occasion to call on said tenants and at their respective tenements for purposes of business or otherwise, and that the way had been used by all persons having occasion to pass and repass through the same, and that, in the year 1854 or 1855, the agent or agents of the owners of said land, in the exercise of a claim of right, placed a gate, barrier, or fence across the way, and that thereby the same was closed to travel some days or weeks, and that, in the year 1860, 1861, or 1862, the agent or agents of said owners, in the exercise of a claim of right, again placed a gate, barrier, or fence across said way, and that the same was thereby closed to travel for a time, or at intervals of time, and that the agent or agents of those claiming under said owners, in the year 1880, in the exercise of a claim of right, placed a gate or fence across said way, and that the same has thereby been closed to travel ever since, then neither the petitioner's intestate, nor those under whom she claimed, could have acquired a right of way over the land of said owners constituting the way by adverse use of the same as a way, although she and they may have used the way during the entire period of its existence, except as aforesaid, in the same manner and for the same purposes as the said tenants and other persons used it.

5. If the jury find that the way in question was opened by the owners of the land over which it passed, in the year 1846, for the accommodation of their tenants living in their brick block of tenement houses opening into the same through the yards and sheds connected therewith, and of those having business or dealings with said tenants, and that from that time forward said way was so used continuously by said tenants and the tenants of those claiming under said owners, and by such persons having business or dealings with them, and was also so used continuously, with the knowledge and consent of said owners and of those claiming under them, by all persons having occasion to pass and repass through the same, including the petitioner's intestate and those under whom she claimed, then neither the petitioner's intestate, nor those under whom she claimed, could have acquired a right of way in and over the same by adverse

use. 6. If the jury find that the petitioner's intestate had acquired a right of way over the premises in question, as claimed by the petitioner in this action, then the resolution of discontinuance passed by the city council of the city of Lowell of that part of said Hanover Street to be discontinued by said resolution would not abridge or narrow said right of way from said Hanover Street, if, as claimed by the petitioner at the trial, the said portion of said Hanover Street so discontinued is the property of the Tremont and Suffolk Mills, the grantees of the original owners of the land over which said way passed, and of the land in the discontinued part of said Hanover Street, against which said original owners and those claiming under them the petitioner claims that his intestate acquired the said right of way by adverse use."

The judge refused to give the instructions requested, but said, with respect to the fifth, that if, by the terms " knowledge and consent " therein, was meant an express consent or permission to the petitioner's intestate, and those under whom she claimed, or a license or permission to her and them, as distinguished from a silent acquiescence in or failure to object in some manner to an asserted right by her and them, then he would give the same ; otherwise, the same was refused.

The jury were instructed, in terms not excepted to, as to what must be shown to establish a right by prescription, and were told that the petitioner could not recover unless he had proved that the use relied upon was adverse, and not permissive; and the term " adverse " was explained. They were also instructed that, in order to recover, the petitioner must show that his intestate was the owner of an interest in the land abutting upon the discontinued portion of Hanover Street; and that, in assessing damages, they would only consider such detriment as was special and peculiar to the estate of the petitioner's intestate, as distinguished from any general damage to the estates in the vicinity growing out of the discontinuance of the street.

The jury returned a verdict for the petitioner ; and the respondent alleged exceptions.

*C. S. Lilley & H. A. Brown*, for the respondent.

*F. T. Greenhalge*, for the petitioner.

FIELD, J.   Hanover Street, which crosses Moody Street at a right angle, and which runs nearly north and south, at its northerly end was a *cul de sac*, and the city of Lowell discontinued a portion of it as a highway, measuring eighty-five and eight tenths feet southerly from the northerly end, so that, after the discontinuance, the northerly end of the street was a line drawn across the street from " the southwesterly side of the Tremont and Suffolk Mills' new storehouse, on the easterly side of said street." The land of Mary E. Webster, of whose estate the petitioner is administrator, lies southerly of the land of the Tremont and Suffolk Mills, and abuts on Hanover Street on the easterly side about eight feet and eleven inches " south of the line of discontinuance."   The petitioner contended that his intestate, and those under whom she claimed, had acquired, by prescription and not otherwise, a right of way, of the width of about twelve feet and of the length of about one hundred and eighty feet, over the land lying to the north of her said real estate, throughout its entire length from Hanover Street to Tremont Street, a street running parallel with Hanover Street, and also extending northerly from Moody Street, and that the outlet of said way would be narrowed from about twelve feet to about eight feet and one inch by the discontinuance.   If there were such a right of way appurtenant to the estate of Mary E. Webster, it must have run easterly from Hanover Street, and, before the discontinuance, those owning the estate could have used the northerly part of Hanover Street, and a way about twelve feet wide, but, after the discontinuance, the way where it entered Hanover Street was only about eight feet and one inch wide.

The first exception is to the refusal of the court to admit as evidence the record copy of a deed from the petitioner to one Naomi Richards, in 1880, of the premises set out in the petition, and which he had conveyed to Mary E. Webster in 1876.   The petitioner was a witness, and, on cross-examination, had denied that, after he gave a deed to Mary E. Webster, under which he, as the administrator of her estate, claimed to maintain the petition, he gave a deed to Richards.   The deed recorded contained a covenant that the grantor was the sole owner in fee of the estate. No objection was taken that the original deed was not produced. If the petitioner conveyed the estate to Mary E. Webster in 1876,

VOL. XXVIII.                    22

and the deed was properly recorded, any conveyance which he might make or attempt to make afterwards would not affect her title, or convey any title to the grantee. If the execution and delivery of the deed to Mary E. Webster in 1876 was disputed, and he had testified to its execution and delivery, evidence of any acts of his inconsistent with this testimony might be given by way of contradiction, as affecting the credibility of his testimony. We cannot say that there might not be such a state of facts that the evidence here offered would be held to be of this character. But no such facts appear in the exceptions. The petitioner was first asked, on cross-examination, if, at any time subsequent to the deed to Mary E. Webster, and before her death, he had owned the estate, or had received a deed of it from any other person, to which he answered in the negative. He was then asked if he had not, about the year 1880, given a deed of the estate to one Richards, and in said deed covenanted that he was sole owner; to which he answered, that he had not given such a deed, and that, if he had, it was a mistake. It was for the purpose of contradicting him in his testimony that the evidence objected to was offered. It does not appear to have been disputed that the petitioner executed and delivered to Mary E. Webster a valid deed of the estate in 1876, or that this deed was not properly recorded, and it is immaterial whether, after this, he gave a deed of it to any other person; and evidence is inadmissible to contradict a witness upon an immaterial matter. That the witness, in the capacity of administrator of the estate of Mrs. Webster, is the petitioner, does not make acts done by him on his own account during the life of Mrs. Webster competent evidence against her estate.

The exception, that the court refused to rule that, in estimating the damages, "no part of the discontinued portion of said Hanover Street except that on which said passageway abutted should be taken into account," must be overruled. Owners of land abutting upon a street have the right to the use of the street in connection with their land throughout its entire length; they can recover only special damages, but we do not see how it affords any aid in measuring these damages to assume that they are the same as if Hanover Street had, before the discontinuance, extended only to the northerly boundary of the passageway,

or as if the city council had discontinued only a strip across the street three feet and eleven inches wide, and bounded on the north by the northerly line of the passageway.

The exception to the refusal to rule that there was not sufficient evidence to warrant the petitioner in going to the jury, is overruled. We are not satisfied that the whole evidence is reported, and the evidence for the respondent, that the owners of the servient estate had from time to time interrupted the use of the way by the petitioner and her predecessors in title was for the jury, and there was some evidence of an open and adverse use, under a claim of right, for more than twenty years by the owners of the estate described in the petition. There was evidence of a passageway from Hanover Street to Tremont Street, and that gates and other barriers, at different times, had been erected across the passageway at places between the two streets, or at the Tremont Street end; but "no witness testified that any gate or other barrier had ever been placed in that part of the passageway between Hanover Street and the rear of the premises of the petitioner's intestate, or that her use of that portion of the passageway, or that of former owners of her estate, had ever been interrupted." It is possible that a right of way may have been acquired to and from Hanover Street, and from and to all parts of the premises described in the petition, and that no right of way had been acquired from these premises to Tremont Street, or through the passageway from street to street. The court instructed the jury, in substance, that if they found that Mrs. Webster, as the owner of the estate, had acquired a right of way to and from Hanover Street over the land which abutted upon the discontinued portion of Hanover Street, "it was immaterial whether she had a right to pass to and from Tremont Street or not." This ruling apparently was given, not as affecting the damages, but the right of action, and we shall so consider it.

One contention of the respondent in his brief is, that "the petitioner, having claimed a right of way in the passageway throughout its entire length from Hanover Street to Tremont Street, and having relied upon a particular use of said passageway to prove such right, could not, if he failed to establish such right, rely upon the very same use to establish a right

in a part only of said passageway." The petition describes the premises by metes and bounds, "together with a passageway upon the northerly side of the premises." By the claim of the petitioner, the respondent must mean his contention at the trial in regard to the nature and extent of the right of way. The respondent relies upon the rule of the common law, that prescriptions presumed to be founded upon grants which have been lost must be strictly proved as alleged. The petition is so general, that proof of a right of way only to and from Hanover Street is not inconsistent with the allegation concerning the passageway; and no objection has been taken to the form of the petition. We have not adopted in our practice, under the statutes providing for the assessment of damages for discontinuing a highway, all the technical rules of pleading at common law; and the proof, in any view of it, was not inconsistent with the petition.

Of the first request for instructions it may be said that it asserts that the effect of the interruptions to the adverse use by the erection of the gates or fences is to make the use permissive, while the effect in fact is to destroy the continuity of the use by the assertion of the paramount right of the owner over the land. If the request had been granted, the petitioner would not have been entitled to damages, if he had only proved a right of way from the premises to Hanover Street, on which there was no evidence that any fence, gates, or barrier had been placed.

The second request ought not to have been granted; because, although the tenants and employees of the Suffolk and Tremont Mills might have used the way permissively, the owners and tenants of the Webster estate might have used it adversely. See *Fitchburg Railroad* v. *Page*, 131 Mass. 391.

The third request for instructions to the jury is a repetition of the first request for a ruling during the trial.

The fourth request is substantially made up of the first and second combined, with some additional facts. The effect of interruptions to the use of the way, by fences and other barriers between the premises described in the petition and Tremont Street, upon the question whether a right of way had been acquired from the premises to Hanover Street, was rightly left to the jury. Whether the jury found that there had been any such

interruptions, we do not know. To acquire a right of way by prescription, there must be an adverse use of the way for twenty years, and this use must be continuous, and as of right. If the use is interrupted by the owner of the land, by obstructions placed upon it in the exercise of his right to prevent the use of the way, the continuity of the use is broken. Whether the interruption is acquiesced in by the claimant of the right of way in such manner that the subsequent use must be regarded as permissive, is a question for the jury upon the facts. As the exceptions find that "the jury were instructed, in terms not excepted to, as to what must be shown to establish a right by prescription," we cannot suppose that the plaintiff's fourth request was intended to be directed to the necessity of an uninterrupted use for twenty years in order to establish a right of way by prescription, or that the instructions given by the court on this point were not satisfactory to the respondent; and it must be considered that this request was properly refused, for the reasons given in considering the first and second requests.

The fifth request was properly modified by the court.

The sixth request was rightly refused. A private right of way could not be acquired in Hanover Street, while it was a public highway, by using the street for the purposes of travel; and, on the discontinuance of a part of the street, the owners of the land held it discharged from the public easement, and there was then no private right of way over it which was appurtenant to the land described in the petition. *Exceptions overruled.*