JAMES M. BALLARD & another *vs.* DANIEL L. DEMMON.

Suffolk.   January 19, 20, 1892. — June 20, 1892.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Way by Necessity — Duty of the Owner of the Servient Estate —
Tenancies created after the Adverse Use has commenced.*

Whether, on a conveyance of a lot of land, a way by necessity arises by implication from the deed in favor of some other lot of the grantor can only be determined by an examination of the title of all the land surrounding this other lot.

Where a right of way is known to exist, it may be that acts of the owner of the dominant tenement in using the way, if consistent with his right, are to be referred to it, unless a different claim of right is made known to the owner

of the servient tenement; but this rule can have no application where it is not shown that the owner of the servient tenement knew of any right of way, and acquiesced in the user on the ground that it was in pursuance of the right.

As a right of way by necessity once existing may cease in consequence of the conveyance of either the dominant or servient estate, or of other estates surrounding the dominant estate, or of the grants of private rights of way, or of the laying out of public ways, it may often be true that it is as much the duty of the owner of the servient estate as it is that of the owner of the dominant estate, to ascertain when the right of way ceases.

The fact that certain persons have a right of way by grant does not prevent other persons from acquiring a prescriptive right to the use of the way.

The rule that the acquisition of an easement by adverse use follows the analogy of the acquisition of title by adverse possession, and that a disability arising after the adverse use has commenced and has become known to the owner of the servient estate does not suspend the acquisition of the right or extend the time necessary to acquire it, applies to tenancies created after the adverse use has commenced.

TORT, for the obstruction of a passageway. Trial in the Superior Court, without a jury, before *Bishop*, J., who found for the plaintiffs, and reported the case for the consideration of this court. If the finding was right, judgment was to be entered for the plaintiffs thereon; otherwise, the finding was to be set aside, and judgment was to be entered for the defendant, or a new trial granted, as law and justice might require.

The facts are sufficiently stated in the opinion, and the passageway and adjacent premises appear on the following page.

*G. Putnam & W. L. Putnam*, for the defendant.

*J. L. Thorndike*, for the plaintiffs.

FIELD, C. J. According to the report, the passageway was established by the deed of lot A from Coolidge to Gould, dated June 26, 1828, and it was and is appurtenant to lot A by grant. Lot B was conveyed by Coolidge to Ballard afterwards on the same day as the conveyance of lot A to Gould, but no rights in the passageway were granted to Ballard. Lot C was conveyed on July 15, 1829, by Coolidge to Hubbard, and "at this time there were two brick houses on lot C, built by Coolidge, with an arched passageway three feet wide under and between them as indicated by the words 'Covered Passageway' on said plan." Lot D was conveyed on October 13, 1829, by Coolidge to Thorndike, who, on October 22, 1829, conveyed it to Ballard, neither deed giving any rights in the passageway. It is contended that from the time of the conveyance of lot C to Hubbard, on

July 15, 1829, to the time of the conveyance of lot D to Ballard, on October 22, 1829, there was a way by necessity over lot C to and from lot D. It is also argued that this way by necessity ceased when Ballard became the owner of lot D, because

Ballard had a way out to Bromfield Street over lot B and his other land. This is true, if Coolidge, after conveying lot C, had no other way out from lot D to a public street, and it is not found that he had such a way; and if the difficulty of making a new way out over lot B and the other land of Ballard to Bromfield Street was not so great as to make the construction of such a way impracticable. There was no evidence that any of the parties actually knew that a way by necessity ever existed, or that this way had been lost by the conveyance of lot D to Ballard. An examination by any of the parties of the title to his lot in the registry of deeds would not necessarily have shown this. Whether on a conveyance of a lot of land a way by necessity arises by implication from the deed in favor of some other lot of the grantor can only be determined by an examination of the title of all the land surrounding this other lot. On the theory of the defendant, Ballard and those claiming under him as owners of lot D never had a way by necessity, because such a way ceased the moment when lot D was conveyed to Ballard. The defendant contended, as the report states, that, without "notice to or knowledge by the defendant of the cessation of plaintiff's right, his use must be attributed to his right as if it had still continued." The court "declined so to rule, and ruled that, notwithstanding the absence of such notice of cessation, a right of way by prescription might be acquired by adverse and continuous use of the way for more than twenty years." There is no conclusive presumption of law that either the owners of lot C or those of lot D ever in fact knew that there was a way by necessity, or knew that such a way, if it ever existed, had ceased. When a right of way is known to exist, it may be that acts of the owner of the dominant tenement in using the way, if consistent with his right, are to be referred to it, unless a different claim of right is made known to the owner of the servient tenement; but this rule can have no application where it is not shown that the owner of the servient tenement knew of any right of way, and acquiesced in the user on the ground that it was in pursuance of the right. Ballard, when he purchased lot D and found it connected with a public street by an open and visible private way, cannot be held, as matter of law, to have known that the origin of the way was

by necessity, and that the right of way ceased when the lot was conveyed to him. As a right of way by necessity once existing may cease in consequence of the conveyances of either the dominant or servient estate, or of other estates surrounding the dominant estate, or of the grants of private rights of way, or of the laying out of public ways, it may often be true that it is as much the duty of the owner of the servient estate as it is that of the owner of the dominant estate, to ascertain when the right of way ceases. The ruling on the facts found in the present case was right.

The principal contention is that as the owner and occupants of lot A had a right to use this way over lot C, the owners of lot C could not prevent the owners or occupants of lot D from using it, and that therefore no right of way by prescription could be acquired in favor of lot D. But the fact that certain persons have a right of way by grant does not prevent other persons from acquiring a prescriptive right to use the way. *Fitchburg Railroad* v. *Page*, 131 Mass. 391, 396. *Webster* v. *Lowell*, 142 Mass. 324, 334, 340. The statutes offered an easy method of preventing the acquisition of a right of way, which the defendant and his predecessors in title could have pursued. St. 1824, c. 52. Rev. Sts. c. 60, § 28. Gen. Sts. c. 90, §§ 34, 35. Pub. Sts. c. 122, § 3. We have no doubt that a user of the way by persons having no right to use it could have been interrupted in other ways, and possibly, under the circumstances, a notice posted on the side of the way would have been sufficient, but we have no occasion to determine this.

Since the decision of *Allis* v. *Moore*, 2 Allen, 306, and of *Currier* v. *Gale*, 3 Allen, 328, and the opinion in *Edson* v. *Munsell*, 10 Allen, 557, we think it must be considered that the acquisition of an easement by adverse use follows the analogy of the acquisition of title by adverse possession, and that a disability arising after the adverse use has commenced, and has become known to the owner of the servient estate, does not suspend the acquisition of the right, or extend the time necessary to acquire it. This rule should apply to tenancies created after the adverse use has commenced. An additional reason for adopting the rule is, that, under the statutes we have cited, an owner, although not in possession, can prevent the acquisition of

a right of way over his land. We think, without considering the facts as they were found to have existed before the year 1860, that it is sufficient that it has been found that in that year the servient estate was conveyed to Milliken, and that he personally occupied it for a considerable period, and that afterwards it was occupied by other landlords, whether as his tenants or employees we do not know, and that it was sold in 1887 by the executor of his estate, and that from 1860 to 1887 " the plaintiffs' use of the passageway " was known to Milliken and his executor, and " was open, adverse, and continuous." Upon these facts, we are of opinion that the finding was correct, and that there must be, *Judgment on the finding.*