BIGELOW CARPET COMPANY *vs.* BURTON H. WIGGIN & others.

Middlesex.   March 24, 1911. — September 5, 1911.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Way,* Private. *Prescription. Practice, Civil,* Conduct of trial : order of opening and closing arguments. *Land Court. Evidence,* Presumptions and burden of proof, Declarations of deceased persons.

At a hearing in the Land Court before the repeal of St. 1905, c. 288, of a petition for the registration of the title to a strip of land adjoining other land of the petitioner, the respondent contended that he had acquired by prescription a right of way over the strip appurtenant to adjoining land owned by him, and the judge of the Land Court found and reported to the Superior Court in accordance with the respondent's contention.  At the trial in the Superior Court on appeal from the Land Court of the issue, whether the respondent had acquired such a way by adverse user, the respondent relied on the report of the judge of the Land Court, and there also was evidence that in 1841 by an agreement under seal, which had been recorded, owners of the strip in question had attempted to dedicate it to the use of the public as a public street, that because it was not accepted by the municipal authorities before the enactment of St. 1846, c. 203, which did away with the establishment of public ways by dedication, it never became a public way by dedication, that from 1841 the strip continuously remained open, that since 1859 it had been paved and kept in repair by the petitioner and his predecessor in title, who had maintained there a sign with the words "Private Way" upon it, and that the respondent continuously and openly had used the strip as a way to and from his land.  The judge of the Superior Court submitted the issue to the jury.  *Held,* that the action of the presiding judge was right.

If, after an attempt by the owner of a strip of land, by a deed under seal duly recorded, to dedicate it to the use of the public as a public way, which failed because there was no acceptance of the way by the municipal authorities before the enactment of St. 1846, c. 203, doing away with the establishment of ways by dedication, there was for over twenty-five years an open and uninterrupted use of the land by another landowner in connection with land of his near by, such landowner may acquire by adverse user a right to the use of the way, although after the failure of the consummation of the dedication the owner may have had an intention, which remained undisclosed, to withdraw the land from use other than in connection with his own land.

A right of way may exist over the same land in favor of different persons who acquired their respective rights in different manners, some by grant and some by prescription through adverse use.

Before 1846 the owner of certain land attempted to dedicate it to use as a public way but the dedication did not become effectual because the municipal authorities did not accept the way before the enactment of St. 1846, c. 203, which did away with the establishment of public ways by dedication.  After 1859 the owner erected beside the way a sign reading, "Private Way," and a

successor petitioned in the Land Court for the registration of an unincumbered title to the land. The Land Court decided adversely to the petitioner and he appealed. The judge framed for the trial in the Superior Court the issue, whether the respondent had obtained a right of way over the land by adverse user. *Held*, that the question, whether the maintenance of the sign was indicative of a purpose to withdraw the attempted dedication or to prevent the acquirement of a right to use the way, was for the jury.

Where an attempted dedication of certain land to use as a public way in 1841 failed because it was not accepted by the municipal authorities before the enactment of St. 1846, c. 203, which did away with the establishment of public ways by dedication, and after the enactment of that statute the owner of the land has assented to the use of the land as a way by certain persons for more than twenty years, a jury may find that such persons have gained a right of way over the land by adverse user, since the assent of the landowner may be found to have indicated, not the granting of a permission, but acquiescence in the exercise of a right inconsistent with unincumbered ownership on his part.

From the fact of open, continuous and persistent user of a way over certain land, knowledge of such user, or acquiescence therein on the part of the owner of the land, can be inferred.

At the trial in the Superior Court of an issue framed on an appeal from the Land Court by the owner of certain land who sought to have his title registered, the issue being, whether the respondent had acquired a right of way over the locus by adverse user, it appeared that the petitioner was the proprietor of a mill bordering on the locus, and evidence was offered by the respondent, for the purpose of showing that the petitioner had knowledge of the use of the way by him, which tended to show that a former superintendent of the petitioner's mill, who at the time of the trial was dead, had said that the passageway must be kept unobstructed for the use of the respondent. The evidence was admitted. *Held*, that the evidence was admitted rightly.

At the trial in the Superior Court of an issue framed on an appeal from the Land Court by the owner of certain land who sought to have his title registered, the issue being, whether the respondent had acquired a right of way over the locus by adverse user, it appeared that the petitioner was the proprietor of a mill bordering on the locus, that the respondent owned land bordering on a way, an extension of which passed over the locus, and that continuously for over twenty years he had used the locus as a way, that the petitioner's predecessor in title before 1846 had attempted to dedicate the locus to use as a public way, but that the dedication had been ineffectual because it had not been accepted by the municipal authorities before the enactment of St. 1846, c. 203, which did away with the establishment of public ways by dedication, that thereafter the way was used practically only by those having business dealings with the petitioner and his predecessor in title and by the respondent and those having dealings with him. The petitioner at the trial contended that, as the dedication had failed, the way should be considered as appropriated and used for the exclusive occupation of himself and of those having business dealings with him, and the evidence offered was confined to that inquiry, the respondent contending only that he had a right to use the way in connection with his estate. The issue was determined in favor of the respondent, and the petitioner alleged exceptions. At no time did the petitioner admit that a public way had been established by prescription. *Held*, that the petitioner could not be heard to contend in support of his exceptions that the respondent could not prescribe for a right of way over the locus in connection with his estate because the land was used as a way by the

public, such contention being inconsistent with his previous contention and with his petition, which sought the registration of an unincumbered title to the land. At the trial in the Superior Court of an issue framed on an appeal from the Land Court by the owner of certain land who sought to have his title registered, the issue being, whether the respondent had acquired a right of way over the locus by adverse user, the petitioner has a right to open and close before the jury, irrespective of who has the burden of proof as to the issue.

PETITION, filed in the Land Court on March 11, 1908, for the registration of the title to a strip of land in Lowell twenty feet wide and about sixty-six and one half feet long, running southerly from Market Street through to a passageway called Carpet Lane. Carpet Lane is a passageway fifteen feet wide running from the southerly end of the strip of land in controversy parallel with Market Street about two hundred and seventy feet and then turning at right angles and running northerly into Market Street. The westerly portion of the rectangle bounded by Market Street, the strip in question and Carpet Lane was owned and occupied by the petitioner with its carpet factory, and the easterly portion consisted of separate lots owned and occupied by the various respondents. Travel to and from the rear portion of the different respondents' lots and Market Street had been for many years carried on over Carpet Lane and the strip in controversy. The strip also had been used by the petitioner and its predecessor in title as the main entrance to its mill property. The respondents claimed rights of way over the strip as appurtenant to their respective estates, while the petitioner claimed that there were no rights existing therein adverse to itself and desired to close it up and build over it.

In the Land Court *Davis*, J., found for the respondents, and, the petitioner appealing, filed in the Superior Court a report of the facts found by him in accordance with St. 1905, c. 288, and framed the following issue for the jury: "Had the respondents Burton H. Wiggin, George F. Parsons and Peter Davey, or either of them, acquired an easement of a right of way appurtenant to their several estates lying between Market Street and Carpet Lane in Lowell over the land sought to be registered by the petitioner, by adverse user prior to the filing of the petition in this cause?"

In the Superior Court the issue was tried before *Hardy*, J. The bill of exceptions states: "The petitioner opened the case to

the jury and read in evidence the report of the judge of the Land Court hereinabove set forth. The petitioner thereupon proceeded to call its witnesses, but the court upon its own motion ruled that the respondents should go forward, to which ruling the petitioner duly excepted. Thereupon the respondents rested upon the judge's report, after which the petitioner introduced the evidence of various witnesses and the respondents introduced testimony by various witnesses. At the close of the evidence the petitioner claimed the right to the closing argument, but the court ruled that the respondents were entitled to the closing argument, to which ruling the petitioner duly excepted. Thereupon, at the direction of the court, the petitioner made the opening argument, and the closing arguments were made by counsel for the respondents."

At the close of the evidence, the petitioner asked for rulings as to each respondent, that on all the evidence he was not entitled to a right of way over the disputed premises as appurtenant to his land, and for the following rulings:

"4. There is no evidence showing an adverse use by the several respondents of the parcel in dispute.

"5. If the jury find that the use by the several respondents of the parcel in dispute was permissive in its origin, there is no evidence that it ever became adverse to the petitioner or its predecessor in title.

"6. In the absence of evidence to show the contrary, it is to be presumed that if the use of the parcel in dispute began under a license it has continued to be permissive and not adverse.

"7. An adverse right to an easement cannot grow out of mere permissive enjoyment.

"8. If the use of the parcel in dispute began under the permission of the predecessor in title of the petitioner that the public in general might use the parcel as a way, and the respondents and their predecessors in title used the way under this permission merely as members of the public, and without claiming the right to use it as appurtenant to their several lots of land or without notice of any such claim to the petitioner or its predecessor in title, such use would not be adverse and would not give rise to a right of way by prescription appurtenant to the land now owned by the several respondents.

" 9. There is no evidence that the respondents or their predecessors in title used the parcel in dispute as a way except under a general permission given by the predecessor in title of the petitioner that the public might use the parcel as a way.

" 10. Even though the public may have gained a right of way over the parcel by prescription, this would not give the respondents a right of way appurtenant to their several lots of land.

" 11. There is no evidence that the respondents or their predecessors in title used the parcel in question under a claim of right as appurtenant to their several parcels of land.

" 12. There is no evidence that the petitioner or its predecessor in title had any notice that the respondents or their predecessors in title were using the parcel as a way under a claim of right distinct from that of the general public.

" 13. The indenture of December 4, 1841, by and between the Proprietors of Locks and Canals and the Lowell Manufacturing Company, so far as it had any effect, applied to the general public and constituted a license to the general public to use the parcel in question as a way.

" 14. No length of user of the parcel in question as a way, by the general public or by the respondents and their predecessors in title, after the indenture of December 4, 1841, would create an easement in favor of the respondents or their predecessors in title, unless such user was adverse and not consistent with the permission granted by said indenture and the petitioner or its predecessor in title and notice of such adverse or inconsistent use.

" 15. If the parcel in question was thrown open for common use as a way, the respondents could not thereafter gain a prescriptive right to use it as appurtenant to their several lots.

" 16. As the title by prescription is founded on the presumption of a grant, the possession (or use) must be such as to render such a presumption reasonable.

" 17. The agreement of December, 1841, between the Proprietors of the Locks and Canals and the Lowell Manufacturing Company, the then owners of the strip of land in question, that the same should be opened for a public street, is inconsistent with

the presumption of a particular grant of a right of way appurtenant to their lands in any of the respondents; and if the jury find that after said agreement was entered into and recorded the respondents used the strip of land in question, in common with the general public, as a street, such user, however long continued, would be insufficient to establish a right of way appurtenant to their respective parcels of land in any of the respondents, as, ' No one can prescribe for a privilege which is common to everyone.' "

The presiding judge declined to rule as requested, except so far as he did so in his charge, material portions of which are described in the opinion.

The material facts in evidence and the other exceptions of the petitioner are stated in the opinion.

The jury answered the issue in the affirmative, and the petitioner alleged exceptions.

The case was argued at the bar in March, 1911, before *Knowlton*, C. J., *Morton, Hammond, Braley,* & *Rugg*, JJ., and afterwards was submitted on briefs to all the justices except *Loring*, J.

*H. LeB. Sampson*, (*H. Wheeler* with him,) for the petitioner.

*F. E. Dunbar*, (*J. J. Pickman* & *G. H. Spalding* with him,) for the respondents.

BRALEY, J.   The respondents concede that the fee in the land is owned by the petitioner, but contend that it is subject to an easement of way, which has become appurtenant to their several estates by prescription.   To support their contention under the issue framed to try the question, they were required to show by a fair preponderance of the evidence that, with the acquiescence of the petitioner or its predecessor in title, the use of the land as a passageway to and from Market Street to Carpet Lane on which the rear of their estates abutted, had been open, uninterrupted and adverse for a period at least of twenty years.   *Lipsky* v. *Heller*, 199 Mass. 310, 317.   *Barnes* v. *Haynes*, 13 Gray, 188.   *Blake* v. *Everett*, 1 Allen, 248.   *Claflin* v. *Boston & Albany Railroad*, 157 Mass. 489.   R. L. c. 130, § 2.   But while unquestioned at the trial, that for more than the required period the way had been used openly and continuously, the petitioner asserted that in its origin the use was permissive, and that the evidence

of the respondents was insufficient to warrant a finding that the easement had been established.

It is undoubtedly true, that an adverse right cannot be gained from permissive enjoyment, or mere accommodation, but generally in an action to establish a right of way by prescription, the question whether the use was under a claim of right, or only permissive is for the jury. *Putnam* v. *Bowker*, 11 Cush. 542.

The judge of the Land Court, whose findings of fact are made *prima facie* evidence, by St. 1905, c. 288, determined as an inference of fact, that "a free and unobstructed use of the strip in question as a way for teams and persons on foot has been acquired by prescription in favor of the respective respondents' estates." See St. 1910, c. 560, §§ 2, 8. If the jury on all the evidence found his report had been controlled, the probative effect conferred by the statute disappeared, but if unaffected the report was sufficient to support the respondents' claim. *Cohasset* v. *Moors*, 204 Mass. 173.

Independently, however, of the report, there was evidence for the consideration of the jury that prescriptive rights had been acquired. By an agreement duly executed and recorded in 1841 the owners, under one of whom the petitioner derives title, dedicated the strip of land in question as a public street. Before the enactment of St. 1846, c. 203, it never became a public way, not having been accepted on the part of the city, and since the statute, it has not been legally laid out and established. *Hayden* v. *Stone*, 112 Mass. 346. Gen. Sts. c. 43, § 82. Pub. Sts. c. 49, § 94. R. L. c. 48, § 98. But from the time of dedication it had remained open, even if since 1859 it has been paved and kept in repair by the petitioner and its grantor and a sign with the words "Private Way" had been erected and maintained. If the original intention had been to restrict its use to their estates, and to their successors in title, if the city did not accept, the undisclosed purpose of the dedicators could not operate to prevent other persons from acquiring adverse rights. *Fitchburg Railroad* v. *Page*, 131 Mass. 391, 396. *Ballard* v. *Demmon*, 156 Mass. 449, 453. A right of way may exist over the same place in favor of different persons holding by diverse titles. If some of them enjoy it by grant or custom, this does not prevent others from acquiring a prescriptive right, even if the use may

be the same in character.   *Kent* v. *Waite*, 10 Pick. 138, 142. *Ballard* v. *Demmon*, 156 Mass. 449.   And the effect to be given to the act of putting up the sign, as indicative of a purpose to withdraw the dedication or to prevent the acquirement of such rights, was for the jury.   During the entire prescriptive period, however, they could have been effectually barred by the statutory notice of an intention to prevent the acquisition of the easement. Rev. Sts. c. 60, § 28.   Gen. Sts. c. 90, § 34.   St. 1867, c. 302. Pub. Sts. c. 122, § 3, now R. L. c. 130, § 3.

But if the attempted dedication failed, the use of the way thereafter by the owners of the dominant estates could have been found by the jury to have been with the assent of the petitioner and its predecessor.   The assent, if proved, was not permissive, in the sense of being an accommodation or license, but the continued use would be evidence of the exercise of an adverse right. *Bassett* v. *Harwich*, 180 Mass. 585, 586.   *Bolivar Manuf. Co.* v. *Neponset Manuf. Co.* 16 Pick. 241, 246, 247.   *Stearns* v. *Janes*, 12 Allen, 582, 584, and cases cited.   As said by Holmes, C. J., in *Bassett* v. *Harwich*, 180 Mass. 585, 586, " so if the evidence tended to prove an attempted dedication, although the dedication failed because of Pub. Sts. c. 49, § 94, it would tend to show that the use thereafter was under a repudiation by the owner of any right to stop it.   It would help, not hinder, the proof of an adverse use."

It also was unnecessary for the owners of these estates formally to assert or to give notice that they claimed the right to pass and repass, or that the petitioner or its predecessor should have been directly informed of their claim.   *Gray* v. *Cambridge*, 189 Mass. 405, 418.   The use was open, continuous and so persistent that the jury could find from these circumstances alone that they knew of it, or their acquiescence could be presumed even if actual knowledge may not be shown.   *Deerfield* v. *Connecticut River Railroad*, 144 Mass. 325, 338.   *McCreary* v. *Boston & Maine Railroad*, 153 Mass. 300, 305.

But there was direct evidence of actual knowledge.   The statement of one Lyon, who died before the trial, that the passageway must be kept unobstructed for the use of the abutters on Carpet Lane was admissible.   It was made by a person entrusted with superintendence of its mill property and while in

the management of the petitioner's business, and, from the evidence of the witness who testified to the declaration, it appears to have been within the scope of his employment. *Parker* v. *Boston & Hingham Steamboat Co.* 109 Mass. 449, 451, 452. *Bachant* v. *Boston & Maine Railroad*, 187 Mass. 392, 396. *Garfield & Proctor Coal Co.* v. *Pennsylvania Coal & Coke Co.* 199 Mass. 22, 42. R. L. c. 175, § 66.

The refusal to give the first four requests, and the ninth, eleventh and twelfth requests was right, and the fifth, sixth, seventh, tenth, thirteenth, fourteenth, fifteenth and sixteenth requests, so far as applicable, were fully covered by the instructions.

It is argued that the eighth and seventeenth requests should have been iven, and that the instructions to which the petitioner excepted are inconsistent with the requests. The basis of the objection is, that if the way was used as a street in common with the general public, no prescriptive right ever attached. The main entrance to the mill property with the company's office fronted on the southerly end of the way, where it turned into the lane, and according to all the evidence the use was substantially confined to its employees and tenants and persons having occasion to transact business at the office, and to the owners of the several estates of the respondents and those who dealt with them. The petitioner neither at the trial nor at the argument contended or admitted that a public way had been established by prescription, and the respondents therefore could not prescribe for a privilege common to the whole community. *Thomas* v. *Marshfield*, 13 Pick. 240, 249. But it contended that as the dedication failed, the way should be considered as appropriated and used for the exclusive use and accommodation of the corporation and of its employees and tenants. The evidence it offered was confined to this inquiry, while the respondents relied wholly upon the use of the way as connected with their estates. It cannot, in order to defeat them, resort to a defense it did not care to make and which if successful would destroy its alleged right to the registration of an unincumbered estate. If the entire charge is read in connection with the evidence, and with the respective positions of the parties in mind, the instructions clearly stated, that if the use was permissive, it could not

ripen into an easement, and the burden was on the respondents to prove that it was adverse. Whatever the mode of travel may have been, the jury must have understood, that unless they were convinced that the use of the way by the owners was in connection with the respondent estates and not merely as travellers or members of the general public an easement had not been acquired.

The remaining exceptions to the instructions are covered by what has been said and need not be further considered.

But if there was no error in the admission of evidence or in the rulings and instructions, the ruling that as the respondents had the burden of proof they had the right to the opening and close, requires us to sustain the exceptions. The petitioner asks to have registered a title in fee, and it is the moving party. If an issue for a jury is framed, that is only an incident of the proceedings, and the transfer of the issue to the Superior Court for trial does not remove the case, which still remains in the Land Court for final disposition, after the answer of the jury has been certified. *Weeks* v. *Brooks*, 205 Mass. 458. It long has been settled in actions at law, and under issues framed for a jury in equity and in probate appeals where a will is offered for proof, that the plaintiff, or the executor, has the right to open and close before the jury, irrespective of the form of the pleadings, or whether, from the nature of the defense or of an affirmative claim or issue, the burden has shifted to the adversary party. *Dorr* v. *Tremont National Bank*, 128 Mass. 349, 358–360. The practice should be uniform, and there is no reason why the case at bar should be taken out of this general and salutary rule.

*Exceptions sustained.*